[Cite as *State v. Toy*, 2020-Ohio-4619.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                         )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                        C.A. No.      19CA011476

    Appellee

    v.                               APPEAL FROM JUDGMENT
                                 ENTERED IN THE
KEVIN TOY                        COURT OF COMMON PLEAS
                               COUNTY OF LORAIN, OHIO
    Appellant                  CASE No.     15CR091428

DECISION AND JOURNAL ENTRY

Dated: September 28, 2020

---

HENSAL, Judge.

{¶1}    Kevin Toy appeals the denial of his motion to suppress and his drug convictions in the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}    Mr. Toy was driving eastbound on the Ohio Turnpike when he was stopped by Ohio State Highway Patrol Sergeant Neil Laughlin, allegedly for a marked lane violation. According to Sergeant Laughlin, he smelled the odor of raw marijuana when he reached Mr. Toy's vehicle and then observed marijuana inside the vehicle while he was speaking with Mr. Toy and a passenger. A subsequent search of the vehicle uncovered crack cocaine in the trunk.

{¶3}    The Grand Jury indicted Mr. Toy on one count of trafficking in drugs with a major drug offender specification and one count of possession of drugs. Mr. Toy moved to suppress the evidence against him, arguing that Sergeant Laughlin did not have reasonable suspicion to stop his vehicle. Following a hearing, the trial court denied his motion. A jury found him guilty of the

offenses and the specification, and the trial court sentenced him to 11 years imprisonment. Mr. Toy has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE COURT ERRED WHEN IT DENIED MR. TOY'S MOTION TO SUPPRESS, VIOLATING MR. TOY'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE. AS A RESULT, THE EVIDENCE WAS ADMITTED AT TRIAL, DENYING MR. TOY THE OPPORTUNITY FOR A FAIR TRIAL.

{¶4}    Mr. Toy argues that the trial court incorrectly denied his motion to suppress. A motion to suppress presents a mixed question of law and fact:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶5}    Mr. Toy argues that the law enforcement officers who testified at the suppression hearing were not credible regarding their reason for stopping his vehicle. He notes that neither of them captured him committing any sort of traffic violation on their dash cameras. He argues that the officers actually have a history of stopping people along the same stretch of highway for alleged marked lane violations that are not captured on camera. Mr. Toy also suspects that Sergeant Laughlin intentionally delayed activating his dash camera to avoid capturing the time period during which the alleged traffic violations occurred. He also argues that it is not credible that Sergeant Laughlin is able to make so many drug busts each year compared to the number of traffic citations he issues.

**{¶6}** Mr. Toy did not introduce any evidence at the suppression hearing regarding the number of other traffic stops Sergeant Laughlin is involved in each year and the circumstances of those stops. According to Trooper Michael Trader, he was transporting an arrestee to jail when he passed Mr. Toy's vehicle, which was travelling below the speed limit. As he passed the vehicle, he noticed that Mr. Toy and his passenger had closed expressions and appeared to be locked in place, facing straight ahead, which he thought was unusual. He watched the vehicle exit into a travel center but radioed ahead to Sergeant Laughlin to report his observations.

**{¶7}** Sergeant Laughlin testified that he heard Trooper Trader's report but did not know how long the vehicle would remain in the travel center. He, therefore, did not have a reason to activate his dash camera. When the vehicle eventually passed his location, however, he saw it drive from the center lane over to the righthand lane, crossing the lane markings by about a tire width before coming back into the center lane. As he prepared to leave the crossover where he was positioned and enter onto the roadway, he saw the vehicle brake suddenly and then change into the righthand lane without activating its turn signal. He, therefore, decided to catch up to the vehicle to initiate a traffic stop. Sergeant Laughlin testified that the dash camera system automatically saves video beginning from 90 seconds before he activates his overhead lights. In this case, the video started from the moment that he was pulling onto the roadway, which was after he observed the traffic violations. There is no evidence in the record regarding the amount of time it would typically take an officer who is starting from a dead stop to catch up to a vehicle like Mr. Toy's.

**{¶8}** The trial court noted that the report Sergeant Laughlin wrote after the stop stated that he saw the improper lane change as he pulled onto the highway, suggesting that it would have been recorded on the video if it had happened. The court thus noted that there was some ambiguity

or contradiction between Sergeant Laughlin's report and his testimony as to when the lane change violation occurred. It assessed the demeanor of Sergeant Laughlin, however, and determined that he did not act in bad faith and manufacture a reason for pulling Mr. Toy over, even if he was mistaken when he wrote the report about exactly when the violation occurred, noting that human beings do not have video recorders in their brains.

{¶9} Sergeant Laughlin explained on cross-examination that, to him, pulling onto the roadway involves a sequence of activity that includes putting on his seatbelt, watching the other traffic on the highway to ensure it is safe to pull out of the crossover, as well as actually driving onto the roadway. He explained that, when he wrote on his report that he saw the improper lane change while pulling out to catch up to Mr. Toy's vehicle, it meant that he saw the violation during the course of activity, not necessarily at the exact moment that he drove onto the roadway. The trial court was in the best position to observe Sergeant Laughlin's "demeanor and to 'use th[o]se observations to weigh the credibility and resolve the conflicts in the testimony.'" (Alteration sic.) *State v. Robinson*, 9th Dist. Wayne No. 18AP0045, 2019-Ohio-3613, ¶ 10, quoting *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. It determined that Sergeant Laughlin did, in fact, observe Mr. Toy commit a traffic violation, even if he was inconsistent about its exact timing. Upon review of the record, we conclude that the trial court's finding is supported by competent, credible evidence. Accordingly, Mr. Toy has not established that the trial court incorrectly denied his motion to suppress. His first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶10} Mr. Toy next argues that his convictions were not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶11} Mr. Toy argues that the State failed to establish that he knowingly possessed the drugs that were found in the trunk. He notes that Sergeant Laughlin testified that, while he was searching Mr. Toy's vehicle, Mr. Toy asked the passenger that he was travelling with whether Sergeant Laughlin was close to discovering the drugs, indicating that he did not know where they were. Mr. Toy also argues that the State did not investigate whose fingerprint was on the trunk of the vehicle or look for DNA evidence in the trunk. He also argues that there was no evidence that he intended to sell the drugs or even ever touched them.

{¶12} The jury found Mr. Toy guilty of trafficking in drugs under Ohio Revised Code Section 2925.03(A)(2) and possession of drugs under Section 2925.11(A). Section 2925.03(A)(2) provides that no one shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." Section 2925.11(A) provides that no one "shall knowingly obtain, possess, or use a controlled substance * * *." "A person acts knowingly, regardless of purpose, when the

person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶13} Sergeant Laughlin testified that, when he interviewed Mr. Toy after arresting him, Mr. Toy admitted that he was transporting the drugs to Pennsylvania to sell them because he only makes minimum wage at his regular job. The Sergeant's testimony was sufficient evidence from which a rational trier of fact could have found that Mr. Toy knowingly possessed the drugs and knowingly transported them with the intention of selling them. We, therefore, conclude that Mr. Toy's convictions were supported by sufficient evidence. Mr. Toy's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶14} Mr. Toy also argues that his convictions are against the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶15} Mr. Toy argues that his convictions are against the manifest weight of the evidence because Sergeant Laughlin's testimony was not credible. Mr. Toy points to the sergeant's purported inconsistency about when the alleged traffic violation occurred. He also notes that there was no recording of his interview with Sergeant Laughlin, even though the sergeant admitted that he could have had someone bring him recording equipment before the interview started. Mr. Toy also notes that the sergeant testified that he makes 80-100 serious drug arrests every year and this was the largest amount of cocaine that he had ever seen. According to Mr. Toy, it is not credible that Sergeant Laughlin would have failed to record either the initial traffic violation or his alleged confession in light of the nature of the stop.

{¶16} Sergeant Laughlin testified that after arresting Mr. Toy, he brought him to a maintenance building where he could further his investigation without being on the roadside. He said that the maintenance building does not have recording equipment and that only some plainclothes investigators carry that type of equipment with them. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Upon review of the record, we cannot say that the jury lost its way when it determined that Sergeant Laughlin's testimony was credible. We conclude that Mr. Toy's conviction was not against the weight of the evidence. Mr. Toy's third assignment of error is overruled.

III.

{¶17} Mr. Toy's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.